PRESENT: Kinser, C.J., Lemons, Goodwyn, Millette, Mims, and Powell, JJ., and Lacy, S.J.

MATTHEW A. GALUMBECK, ET AL.

OPINION BY
v.  Record No. 102416                JUSTICE CLEO E. POWELL
                                         March 2, 2012
JOSEPH LOPEZ, ADMINISTRATOR OF THE
ESTATE OF MARITESS Q. LOPEZ, DECEASED

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Edward W. Hanson, Jr., Judge

Dr. Matthew A. Galumbeck and Plastic Surgery of Tidewater, P.C. appeal a judgment in favor of the plaintiff Joseph Lopez ("Lopez"), administrator of the estate of Maritess Q. Lopez ("Maritess").  Finding that the trial court did not err, we affirm the judgment.

BACKGROUND

On July 30, 2008, Maritess underwent outpatient surgery performed by Dr. Galumbeck.  After the surgery, Kenneth Hale brought Maritess home.  He noticed that she was not breathing normally, she was unable to speak clearly and she had to be helped to his car by the nurses.

On July 31, 2008, the morning after the surgery, Carmelita Hale ("Hale"), Maritess' sister, called Dr. Galumbeck's office and spoke to Nurse Marsha Phillips.  Hale told Nurse Phillips that Maritess was in pain, feverish and very dizzy.  According to Hale, Nurse Phillips expressed no concern and told her those symptoms were normal.

Later that same day, Maritess died from aspiration pneumonia secondary to the surgery.  Lopez, her husband, qualified as administrator of her estate and brought a wrongful-death action against Dr. Galumbeck, Dr. Carl Flor,[1] and Plastic Surgery of Tidewater, P.C.

At trial, Dr. Galumbeck testified that Nurse Phillips could not have answered the phone call from Hale on July 31, 2008, because she was in the operating room with him at that time. When asked how he knew that, Dr. Galumbeck stated that he had reviewed the surgical log.  At that point, Lopez' counsel objected and the trial court held a side bar conference.[2]  The trial court then instructed the jury to disregard the mention of any surgical log.

Dr. Galumbeck also testified that he was not paid for the surgery.  Another side bar conference was held, also off the record.  Dr. Galumbeck alleges that during the side bar conference, he attempted to offer documents into evidence that show he was never paid for the surgery.  According to Dr. Galumbeck, the trial court rejected the evidence.

---

[1] Dr. Flor was the anesthesiologist during the surgery.  The claims against Dr. Flor were nonsuited prior to trial.

[2] This discussion was not on the record, however, Dr. Galumbeck claims that, during the side bar conference, he sought to have the surgical log entered into evidence.  According to Dr. Galumbeck, the trial court denied his request.

During cross-examination, Dr. Galumbeck was asked about the contents of his website, namely whether it states that he offers board-certified anesthesiologists for all operations at Plastic Surgery of Tidewater, P.C. Dr. Galumbeck's counsel stated "Objection. May we approach?" Another side bar discussion was held off the record. At the conclusion of that discussion, the trial court overruled the objection and Lopez' counsel was permitted to question Dr. Galumbeck about whether his website indicated that he offered only board-certified anesthesiologists. Dr. Galumbeck admitted his website stated that his anesthesiologists were board-certified, even though Dr. Flor is not board-certified. When Lopez offered a copy of the website into evidence, counsel for Dr. Galumbeck objected to the relevance of the exhibit. The document was admitted into evidence.

At the end of the day, after the court adjourned, counsel for Dr. Galumbeck recorded a statement with the court reporter that he called a "proffer." In his statement, counsel summarized his arguments and some of the trial court's rulings regarding counsel's attempts to introduce Defendant's rejected Exhibit A, the surgical log, and Defendant's rejected Exhibit B, the payment records. Counsel also restated his objections about the admission of evidence that Dr. Flor was not a board-certified anesthesiologist.

3

The following morning, Dr. Galumbeck made a motion for a mistrial based on the misconduct of Juror Conway. According to Dr. Galumbeck's counsel, he saw Juror Conway shake the hand of Dr. Waisman, one of Lopez' expert witnesses, and tell him "good job," after Dr. Waisman had testified and the jury was leaving the courtroom. Counsel for Dr. Galumbeck further alleged that Juror Conway "shook his head[] and made a gesture with his right fist, as if to say, I'm with you" towards Lopez.

The trial court stated that it would allow counsel to question Juror Conway about these incidents. Counsel for Dr. Galumbeck objected, stating that he believed it would be improper for him to question the juror and then have the juror remain on the jury. The trial court overruled the objection.

Outside of the presence of the other jurors, the trial court asked Juror Conway if he had spoken to the plaintiff's expert. Juror Conway responded that he "didn't talk to him. [He] just shook his hand and said 'good job.' " The trial court asked what he meant by that, and Juror Conway responded that he "thought [the expert] did a good job in dealing with . . . what he was asked to do." The trial court asked if this interaction in any way indicated that Conway was biased, and Juror Conway responded that it did not. The trial court then asked if Juror Conway had ever shaken hands with Lopez, and Juror Conway responded, "I have never touched Mr. Lopez."

4

The trial court then allowed counsel for both parties to question Juror Conway. Counsel for Lopez asked if Juror Conway could "fairly and impartially decide this case," to which Juror Conway responded "Absolutely."

Counsel for Dr. Galumbeck then asked Conway if he had nodded his head at Lopez as he walked by. Conway responded, "Oh, I've nodded my head at several people in here. What, can you not nod your head or what?" He further explained that he might have acknowledged Lopez with a nod "like 'how are you,' " but reiterated that he was impartial. The trial court ultimately denied Dr. Galumbeck's motion for a mistrial.

Dr. Galumbeck then moved for a mistrial based on the admission of evidence about Dr. Flor's lack of board certification. The trial court said that it had already ruled on that issue and denied the motion. Counsel for Dr. Galumbeck asked to state his motion for the record, but the trial court denied his request, stating: "This is denied, you can cite your objections later." When counsel for Dr. Galumbeck asked if the court was not permitting him to state his motion for the record, the trial court responded: "Not now. You will be [allowed] later. We've got to get the case moving."[3]

---

[3] There is no indication in the record that counsel for Dr. Galumbeck attempted to state his motion for the record at a later time.

After hearing all of the evidence, the jury returned a verdict in favor of Lopez.  Dr. Galumbeck and Plastic Surgery of Tidewater, P.C. subsequently filed a motion to set aside the verdict.  The trial court denied the motion and entered judgment on the jury verdict.

## ANALYSIS

On appeal, Dr. Galumbeck asserts that the trial court erred in (1) denying his motion for a mistrial due to a juror's alleged misconduct; (2) prohibiting him from introducing the surgical log into evidence or from using it to refresh Nurse Phillips' recollection; (3) allowing testimony and evidence on a collateral matter; and (4) admitting the unpaid medical bills into evidence.

### 1. Juror Misconduct

Dr. Galumbeck argues that the trial court abused its discretion by denying his motion for a mistrial due to the misconduct of Juror Conway.  Dr. Galumbeck contends that Juror Conway's actions and his evasive and confrontational attitude when questioned about his actions clearly demonstrated that he lacked impartiality.  According to Dr. Galumbeck, Juror Conway's lack of impartiality required the trial court to replace him with the available alternate juror or declare a mistrial.  We disagree.

We have recognized that

6

> a mistrial will not be declared automatically upon a showing of juror misconduct, but that the trial judge, in the exercise of a sound discretion, must determine whether remarks made about the case by a juror to persons not jurors demonstrate that prejudice might result. The burden to establish this probability of prejudice is upon the party moving for a mistrial. This view is based upon the universal rule that fraud will not be presumed and upon the reluctance to presume prejudicial misconduct.

Haddad v. Commonwealth of Virginia, 229 Va. 325, 330, 329 S.E.2d 17, 20 (1985).

Thus, the law is clear that an empanelled juror is presumed impartial and the burden to prove prejudice is on the party moving for a mistrial. Id. Here, Juror Conway explained his actions[4] and those explanations were found to be credible by the trial court. On this record, it cannot be said that Dr. Galumbeck carried his burden of proving prejudicial misconduct on the part of Juror Conway.

## 2. Surgical Log

Dr. Galumbeck next argues that the trial court erred by refusing to allow him to question witnesses about the surgical log or introduce the surgical log into evidence as a sanction for violating Rule 4:12. He contends that there was no Rule 4:12 violation, as there was no order compelling discovery of the surgical log. He further states that he did not violate the

---

[4] We note that Juror Conway was not asked about the hand gesture he allegedly made toward Lopez.

pretrial scheduling order, as the order did not require either party to list exhibits that are to be introduced for rebuttal or impeachment. Finding that Dr. Galumbeck has failed to present a sufficient record to permit review of the assigned error, we hold that this argument is waived.

> It is the obligation of the petitioner/appellant to ensure that the record is sufficient to enable the Court to evaluate and resolve the assignments of error. When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues related to the assignments of error, any assignments of error affected by the omission shall not be considered.

Rule 5:11(a)(1). In conjunction with this Rule, this Court has repeatedly admonished:

> A circuit court's judgment is presumptively correct, and the appellant bears the burden of presenting a sufficient record to permit a determination whether the circuit court committed an alleged error.

Commonwealth Transp. Comm'r v. Target Corp., 274 Va. 341, 348, 650 S.E.2d 92, 96 (2007).

"We will not consider testimony which the trial court has excluded without a proper showing of what that testimony might have been." O'Dell v. Commonwealth, 234 Va. 672, 697, 364 S.E.2d 491, 505 (1988). A necessary corollary to this rule is that we will not consider an objection made to the trial court without a proper showing of what that objection was. As with excluded evidence, absent a transcript or written statement of

8

the facts that captures the arguments made at trial, this Court has no basis upon which to review the trial court's ruling. Whittaker v. Commonwealth, 217 Va. 966, 968-69, 234 S.E.2d 79, 81 (1977).

In the present case, all of the relevant discussions related to this issue were held off the record in a sidebar conference. Dr. Galumbeck contends that he preserved this argument, as well as others, by way of a proffer made on the record. However, it is clear that Dr. Galumbeck's "proffer" was recorded after court had adjourned for the day and outside of the presence of opposing counsel. Under our jurisprudence, only "a unilateral avowal of counsel, if unchallenged, or a mutual stipulation of the testimony expected constitutes a proper proffer." Id. at 969, 234 S.E.2d at 81.

> [A]bsent such acquiescence or stipulation, this Court will not consider an error assigned to the rejection of testimony unless such testimony has been given in the absence of the jury and made a part of the record in the manner prescribed by the Rules of Court.

Id.

It can hardly be said that Lopez acquiesced or stipulated to a statement that he was unaware Dr. Galumbeck was making. Thus, Dr. Galumbeck's statement does not qualify as a proper proffer. Accordingly, he failed to preserve those issues for appeal.

Similarly, we hold that Dr. Galumbeck's argument regarding the use of the surgical log to refresh Nurse Phillips' memory is without merit. A review of the record demonstrates that Dr. Galumbeck made no attempt to refresh Nurse Phillips' recollection with the surgical log. Accordingly, we need not address this argument.

### 3. Dr. Flor's Board Certification

Dr. Galumbeck next argues that the trial court abused its discretion by allowing Lopez to raise the issue of Dr. Flor's lack of board certification. Dr. Galumbeck contends that these facts were collateral to the issue before the trial court, and therefore should have been excluded. We need not decide this issue, as Dr. Galumbeck has failed to preserve this issue for appellate review.

Dr. Galumbeck initially raised his objections to testimony about Dr. Flor's lack of board certifications in a pretrial motion in limine. However, he failed to request a ruling from the trial court on this matter. Accordingly, he has waived this issue on appeal. See <u>Lenz v. Commonwealth</u>, 261 Va. 451, 463, 544 S.E.2d 299, 306 (2001).

During the course of Dr. Galumbeck's testimony, Lopez asked about the contents of Dr. Galumbeck's website, specifically referencing a statement that Dr. Galumbeck offered board

10

certified anesthesiologists.[5]  Dr. Galumbeck objected and sought

another sidebar conference.  Thus, his actual objection and the

grounds therefor were made off the record.  As such, this

argument is waived for the same reasons discussed above.  See,

e.g., Whittaker, 217 Va. at 968-69, 234 S.E.2d at 81.

Finally, with regard to the information found in

Plaintiff's Exhibit #3, a printout of Dr. Galumbeck's website,

Dr. Galumbeck did specifically object to its introduction on the

grounds that it was irrelevant.  We note, however, that Defense

Exhibit #5, offered by Dr. Galumbeck and admitted into evidence,

contains the same printout of his website to which he now

objects.  We have repeatedly held that "where [a party]

unsuccessfully objects to evidence which he considers improper

and then on his own behalf introduces evidence of the same

character, he thereby waives his objection."  Saunders v.

Commonwealth, 211 Va. 399, 401, 177 S.E.2d 637, 638 (1970)

(citing Snead v. Commonwealth, 138 Va. 787, 801-02, 121 S.E. 82,

86 (1924); Culbertson v. Commonwealth, 137 Va. 752, 757-58, 119

S.E. 87, 88 (1923); Hutchinson v. Commonwealth, 133 Va. 710,

---

[5] Counsel for Lopez initially inquired about "board certified plastic surgeons."  However, upon Dr. Galumbeck's objection to the question, counsel for Lopez realized he had misstated the contents of the website and corrected himself, stating: "Excuse me.  Thank you, Your Honor. Anesthesiologists."  Dr. Galumbeck then objected a second time.

11

716-17, 112 S.E. 624, 626 (1922); <u>Snarr v. Commonwealth</u>, 131 Va. 814, 818-19, 109 S.E. 590, 592 (1921)).

### 4. Medical Bills

Dr. Galumbeck argues that the trial court abused its discretion by allowing copies of Maritess' medical bills into evidence. Dr. Galumbeck contends that there was no claim for medical expenses in this case, therefore this evidence was irrelevant. He further asserts that the trial court compounded this error by refusing to allow him to present evidence that demonstrates that Maritess did not pay her medical bills. We disagree.

> We review a trial court's evidentiary rulings applying an abuse of discretion standard. We will not overturn a trial court's exercise of its discretion in determining whether to admit or exclude evidence on appeal unless the evidence shows that the trial court abused its discretion. <u>Hinkley v. Koehler</u>, 269 Va. 82, 91, 606 S.E.2d 803, 808 (2005). While a "trial court has no discretion to admit clearly inadmissible evidence," <u>Norfolk & Western Ry. Co. v. Puryear</u>, 250 Va. 559, 563, 463 S.E.2d 442, 444 (1995) (quoting <u>Coe v. Commonwealth</u>, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986)), "a great deal must necessarily be left to the discretion of the court of trial, in determining whether evidence is relevant to the issue or not." <u>Peacock Buick, Inc. v. Durkin</u>, 221 Va. 1133, 1136, 277 S.E.2d 225, 227 (1981) (internal quotation marks omitted).

<u>Riverside Hosp., Inc. v. Johnson</u>, 272 Va. 518, 529, 636 S.E.2d 416, 421-22 (2006).

12

It is clear that, in the present case, the medical bills were not offered for the purposes of seeking damages or demonstrating how much money Dr. Galumbeck received.  Rather the medical bills were offered to contrast the level of emphasis Dr. Galumbeck placed on the financial aspect of the transaction with the quality of the medical care he delivered.  Thus, the evidence was arguably relevant to the plaintiff's theory of the case.  Furthermore, the record demonstrates that Dr. Galumbeck was allowed to testify, without objection,[6] that he was not paid for the procedure.  Accordingly, the trial court did not abuse its discretion in allowing the medical bills into evidence.

<u>CONCLUSION</u>

For the foregoing reasons, the judgment of the trial court will be affirmed.

<u>Affirmed.</u>

---

[6] The record indicates that a sidebar conference occurred during Dr. Galumbeck's testimony on this matter, however, as with the sidebar conferences discussed above, the discussion was held off the record.  Accordingly, any error related to discussions that may have occurred during that sidebar conference is waived.  <u>See</u> Rule 5:11(a)(1).